UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

ALLISON WELDER,

    Plaintiff,

v.

UNIVERSITY OF SOUTHERN NEVADA, a Nevada non-profit corporation; and RENEE COFFMAN,

    Defendants.

2:10-CV-01811-LRH-LRL

ORDER

    Before the court is Defendants University of Southern Nevada and Renee Coffman's Motion to Dismiss Plaintiff's Eleventh, Twelfth, and Thirteenth Claims for Relief Pursuant to FRCP 12(b)(6) (#8[1]). Plaintiff Allison Welder filed an opposition (#11), and Defendants filed a reply (#13).

**I.    Facts and Procedural History**

    This action arises out of Plaintiff's employment and termination of her employment as Professor of Pharmacy at Defendant University of Southern Nevada ("USN"). Defendant Renee Coffman ("Dr. Coffman") was Dean of the College of Pharmacy and University Administrator during the time in question, January 2002 to November 2009.

---

[1]Refers to the court's docket entry number.

Plaintiff commenced her employment with USN on January 1, 2002 as a Professor of Pharmacy, a position she maintained throughout her employment with USN. Doc #1, p. 2. On June 2, 2008, Plaintiff entered into a five-year employment contract with USN, commencing July 1, 2008. *Id.*

On January 29, 2009, Plaintiff notified Dr. Coffman that she had been diagnosed with bladder cancer and was going in for immediate surgery and biopsy. *Id.* On February 3, 2009, Plaintiff received a letter of reprimand from Dr. Coffman, stating that Plaintiff's behavior from missing work due to her illness was "unprofessional and unacceptable." *Id.* On March 3, 2009, Plaintiff received her second letter of reprimand from Dr. Coffman for two incidents involving Plaintiff's role as faculty advisor for USN's Delta Tau chapter of Kappa Psi. *Id.* at 3. In the first incident Plaintiff had to leave a ceremony early for a medical procedure, and the second incident involved Plaintiff arriving late to a meeting. *Id.* at 3.

In April 2009, Plaintiff sent two formal letters to USN and Dr. Coffman stating she believed she was being subject to disparate treatment on the basis of age and formally requesting reasonable accommodation for her disability under the ADA. *Id.* USN gave two responses, one on April 27, 2009, which was a "curt," two sentence response from Dr. Coffman. *Id.* Then on April 28, 2009, G. Benjamin Wills, Director of Human Resources, responded he could not find any Family and Medical Leave Act ("FMLA") form or any previous request for accommodation from Plaintiff. *Id.* at 4. Plaintiff responded she was not requesting a leave of absence under the FMLA but a minor accommodation under the ADA, for brief absences during business hours for her medical needs. *Id.*

Mr. Wills rejected Plaintiff's accommodation request stating USN had already met their legal obligation to provide accommodation to Plaintiff. *Id.* Plaintiff responded that USN and Dr. Coffman singled her out and unfairly punished her because of her absence. *Id.* at 5. In a letter dated June 2, 2009, Mr. Wills informed Plaintiff that the "mere presence in an employee's personnel file of documents from a supervisor formally informing the employee that he or she did something wrong" does not give rise to discrimination or retaliation. *Id.* On June 23, 2009, Mr. Wills sent

another letter stating it was inappropriate, perhaps libelous, for Plaintiff to continue to assert that Dr. Coffman was engaging in unlawful discriminatory conduct. *Id.*

On August 31, 2009, Dr. Coffman ordered Plaintiff to complete a remediation plan after Plaintiff's students left adverse comments to her teaching practices. *Id.* Dr. Coffman stated the comments from the students could expose USN to charges of discrimination and sexual harassment. *Id.* In defense to the allegations, Plaintiff claimed that she was merely teaching the students about sexual subjects concerning drug actions and drug-drug interactions that were pertinent to their education if they desired to be pharmacists. *Id.* at 8. Dr. Coffman reserved the right to subject Plaintiff to additional sanction up to and including termination if the remediation plan was not done right. *Id.*

After the adverse student reactions and the assignment of the remediation plan, Dr. Coffman banned Plaintiff from the campus until November 16, 2009. *Id.* On November 16, 2009, Plaintiff finished the remediation plan and submitted it to Dr. Coffman. *Id.* Dr. Coffman claimed the remediation plan was due by the end of business hours on November 13, 2009, and in a letter addressed November 16, 2009, terminated Plaintiff's employment. *Id.* at 9. The letter was sent on behalf of USN and was signed by Dr. Coffman. *Id.* On November 17, 2009, Plaintiff demanded payment for all money due to her under her employment contract. *Id.*

After obtaining a right to sue letter from the EEOC, Plaintiff filed her complaint (#1) initiating this action on October 18, 2010. The Defendants moved to dismiss three of Plaintiff's thirteen claims for relief (#8). The eleventh, twelfth, and thirteenth claims asserted are: (11) intentional interference with contractual relations against Dr. Coffman, (12) intentional infliction of emotional distress ("IIED") against USN, and (13) IIED against Dr. Coffman. Plaintiff filed an opposition (#11), and Defendants filed a reply (#13).

II.     **Legal Standard**

Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  To survive a motion to dismiss for failure to state

3

a claim, a complaint must satisfy the Federal Rule of Civil Procedure 8(a)(2) notice pleading standard. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). That is, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8(a)(2) pleading standard does not require detailed factual allegations; however, a pleading that offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the misconduct alleged. *See id.* at 1949-50. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 1949 (internal quotation marks and citation omitted).

In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Id.* However, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1951) (brackets in original) (internal quotation marks omitted). The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Id.* (citing *Iqbal*, 129 S. Ct. at 1951.) "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949).

4

### III. Discussion

**A. Intentional Interference with Contractual Relations**

Plaintiff alleges Defendant Coffman intentionally interfered with the contractual relations between Plaintiff and Defendant USN. To state a claim for intentional interference with contractual relations, there must be: "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003).

Here, Plaintiff adequately alleges each of these five elements. First, Plaintiff had a valid employment contract with Defendant USN. *See* Doc. #1, ¶¶ 10-11, 98. Second, Dr. Coffman had actual knowledge of the contract. *See Id.*, ¶¶ 21, 22, 32(b), 99. Third, Dr. Coffman intentionally disrupted Plaintiff's employment contract when she issued letters of reprimand, imposed sanctions by requiring Plaintiff to complete a remediation plan and by barring Plaintiff from campus, and terminated Plaintiff's employment. *See Id.*, ¶¶ 13-36, 100. Fourth, Plaintiff's contract was actually disrupted when she was fired and her contract was terminated. Fifth, Plaintiff suffered actual damage when she was not fully paid for the remainder of her five year contract.

Nonetheless, Plaintiff fails to state a claim because Dr. Coffman was acting in her capacity as Dean of the College of Pharmacy and University Administrator. "In Nevada, a party cannot, as a matter of law, tortiously interfere with its own contract." *Blanck v. Hager*, 360 F. Supp. 2d 1137, 1154 (D. Nev. 2005). "[A]gents acting within the scope of their employment, i.e. the principal's interest, do not constitute intervening third parties, and therefore cannot tortiously interfere with a contract to which the principal is a party." *Id.* (citing *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911-12 (D. Nev. 1993)).

Although, Plaintiff alleges that Dr. Coffman was acting "outside the course and scope of her employment," Doc. #1, ¶ 101, the court need not accept such conclusory allegations as true. *Moss*, 572 F.3d at 969. Plaintiff's complaint is devoid of any factual allegations to support her claim that

Dr. Coffman was not acting within her employment capacity as Dean of the College of Pharmacy and University Administrator.

Moreover, Plaintiff's conclusory allegation is inconsistent with her well-pleaded factual allegations regarding Dr. Coffman's allegedly tortious conduct. Dr. Coffman's actions in reprimanding Plaintiff, imposing employment related sanctions, and terminating Plaintiff's employment could have been taken only in Dr. Coffman's capacity as Plaintiff's supervisor and on behalf of USN. Because Plaintiff's well-pleaded allegations in the complaint entail only actions taken within the course and scope of Dr. Coffman's employment, the claim of intentional interference with contractual relations fails as a matter of law and is dismissed without prejudice.

**B. Intentional Infliction of Emotional Distress**

To state a claim for intentional infliction of emotional distress the plaintiff must establish: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress, and (3) actual or proximate causation." *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999) (quoting *Star v. Rabello*, 625 P.2d 90, 92 (Nev. 1981)). "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (internal quotation marks and citation omitted). "The Court determines whether the defendant's conduct may be regarded as extreme and outrageous so as to permit recovery, but, where reasonable people may differ, the jury determines whether the conduct was extreme and outrageous enough to result in liability." *Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1121 (D. Nev. 2009) (citing *Norman v. Gen. Motors Corp.*, 628 F. Supp. 702, 704-05 (D. Nev. 1986)).

Plaintiff has set forth two separate claims for intentional infliction of emotional distress. In her Twelfth claim for relief, Plaintiff asserts Defendant USN should be held vicariously liable for the alleged intentional acts of Dr. Coffman and Benjamin Wills, to the extent they were acting in their capacity of managerial employees for USN. The Thirteenth claim for relief is solely against

6

Defendant Coffman, to the extent she was acting outside of the course and scope of her employment. Plaintiff fails to distinguish between the intentional acts that are within the course and scope of Dr. Coffman's employment and which are outside, so they will be analyzed together.

Plaintiff alleges, at length, the intentional acts as grounds for her claim. *See* Doc. #1, ¶¶ 13-36, 109, 116. Plaintiff's accusations include: (1) receiving letters of reprimand and papering her file, (2) being pressured to take FMLA leave, (3) notification of exposure to a sexual harassment suit, (4) assignment of the remediation plan, (5) being barred from campus, and (6) termination of her employment. Defendants argue the conduct alleged, regarding the treatment and termination of Plaintiff, does not give rise to an actionable claim for IIED.

"A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." *Janken v. GM Hughes Elec.*, 46 Cal. App. 4th 55, 80 (1996). Personnel management consists of such actions as hiring and firing, project assignments, promotion and demotions, performance evaluations and other similar acts. *Id.* at 64-65. Plaintiff's claims regarding receiving letters of reprimand, papering her file, being barred from campus and being assigned the remediation plan are all actions that are properly categorized as personnel management. Even if the decisions by Dr. Coffman and Benjamin Wills had improper motive, the conduct itself is not beyond all bounds of human decency. *Id.* at 80.

Plaintiff's termination from her position as Professor of Pharmacy also does not constitute extreme and outrageous conduct. "Termination of employees, even in the context of a discriminatory policy, does not in itself amount to extreme and outrageous conduct actionable under intentional infliction of emotional distress." *Alam*, 819 F. Supp. at 911. To the extent that Plaintiff's termination or other adverse employment actions were due to a discriminatory policy, Plaintiff may have a legal remedy in her discrimination claims not addressed here.

Plaintiff also claims she was threatened with a sexual harassment suit and pressured to take FMLA leave. She alleges that Dr. Coffman and Benjamin Wills sent letters informing Plaintiff that

7

she made USN susceptible to threats of sexual harassment and suggesting she take FMLA leave. While Plaintiff characterizes the correspondence as threats, such communications do not constitute extreme and outrageous conduct. *See Janken*, 46 Cal. App. 4th at 80; Restatement (Second) of Torts § 46 cmt. d (1965) ("[L]iability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.").

The alleged intentional acts set forth by Plaintiff fall short of extreme and outrageous conduct because the acts fall under normal employment relations. The conduct surrounding Plaintiff's treatment as an employee and her termination is insufficient to meet the first element of an IIED claim. Therefore, the twelfth and thirteenth claims for relief are dismissed without prejudice.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Plaintiff's Eleventh, Twelfth, and Thirteenth Claims for Relief (#8) is GRANTED.

IT IS SO ORDERED.

DATED this 21st day of June, 2011.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE